UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    and<br><br>COMMONWEALTH OF PENNSYLVANIA<br><br>    Plaintiffs,<br><br>    v.<br><br>SCHWAB FAMILY PARTNERSHIP (f/k/a<br>  FRANKLIN SMELTING & REFINING CO.);<br>FRANKLIN SMELTING & REFINING CORP.;<br>FRANCOS REALTY, INC.;<br>MDC INDUSTRIES, INC.;<br>ALBERT SCHWAB;<br>MICHAEL SALTZBURG;<br>BETTY SALTZBURG;<br>BETTY SALTZBURG, as EXECUTRIX of the<br>  ESTATE OF DAVID SALTZBURG;<br>SUSAN SALTZBURG;<br>ROGER SCHWAB;<br>ANN SCHWAB BROWN,<br><br>    Defendants. | Civil Action No. 10-412-JD |

## AMENDED COMPLAINT

Plaintiffs, the United States of America ("United States"), by authority of the Attorney

General, and at the request of the Administrator of the United States Environmental Protection

Agency ("EPA"), and the Commonwealth of Pennsylvania Department of Environmental

Protection ("Commonwealth"), hereby file this Amended Complaint and allege as follows:

**PRELIMINARY STATEMENT**

1.       This is a civil action under Sections 107 and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(b), for recovery of response costs incurred and to be incurred by the United States in response to the release or threat of release of hazardous substances at the Franklin Smelting Site ("Smelting Site") and the Franklin Slag Site ("Slag Site") (collectively, the "Sites"), located in Philadelphia, Pennsylvania.

2.       In addition, this action is brought by the Commonwealth under the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020, for recovery of response costs that it has incurred in connection with the Slag Site.

**JURISDICTION AND VENUE**

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331(a), 1345, and 1367, and 42 U.S.C. §§ 9607(a) and 9613(b).

4.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 9613(b), because the claims arose in this judicial district.

**DEFENDANTS**

5.       Defendant Schwab Family Partnership (the "Partnership") is a general partnership established under the laws of the Commonwealth of Pennsylvania and, at times relevant hereto, conducted business in the Commonwealth of Pennsylvania. The Partnership was previously named Franklin Smelting and Refining Company, and also traded under the name Franklin Smelting & Refining Co. Through a February 1, 1983 Amending Agreement to the original partnership agreement, the Partnership adopted the trade name Schwab Family Partnership. The

2

Partnership is comprised of the general partners listed below in Paragraphs 9-15.

6.      Defendant Franklin Smelting & Refining Corp. ("Franklin Corp.") is a corporation established under the laws of the Commonwealth of Pennsylvania and, at times relevant hereto, conducted business in the Commonwealth of Pennsylvania.

7.      Defendant Francos Realty, Inc. ("Francos Realty") is a corporation established under the laws of the Commonwealth of Pennsylvania and, at times relevant hereto, conducted business in the Commonwealth of Pennsylvania.

8.      Defendant MDC Industries, Inc. ("MDC")  is a corporation established under the laws of the Commonwealth of Pennsylvania and, at times relevant hereto, conducted business in the Commonwealth of Pennsylvania.

9.      Defendant Albert Schwab is a resident of the Commonwealth of Pennsylvania. Mr. Schwab has been a general partner of the Partnership since 1952, either in his individual capacity or as the beneficiary of a trust.

10.      Defendant Michael Saltzburg is a resident of the Commonwealth of Pennsylvania. Mr. Saltzburg has been a general partner of the Partnership since 1952, either in his individual capacity or as the beneficiary of a trust.

11.      Defendant Betty Saltzburg is a resident of the Commonwealth of Pennsylvania. Ms. Saltzburg has been a general partner of the Partnership in her individual capacity since 1967.

12.      Defendant Betty Saltzburg is also named in her capacity as the Executrix and personal representative of the Estate of David Saltzburg.  David Saltzburg was a general partner of the Partnership from at least 1952 to 1979 when it traded under the name Franklin Smelting and Refining Company.  Upon David Saltzburg's death in 2005, his Estate became liable for his

3

debts and liabilities.

13.     Defendant Susan Saltzburg is a resident of the State of Ohio.  Ms. Saltzburg has been a general partner of the Partnership since 1952, either in her individual capacity or as the beneficiary of a trust.

14.     Defendant Roger Schwab is a resident of the Commonwealth of Pennsylvania. Mr. Schwab has been a general partner of the Partnership since 1952, either in his individual capacity or as the beneficiary of a trust.

15.     Defendant Ann Schwab Brown is a resident of the Commonwealth of Pennsylvania.  Ms. Schwab has been a general partner of the Partnership since 1952, either in her individual capacity or as the beneficiary of a trust.

16.     Each Defendant falls within the definition of a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## GENERAL ALLEGATIONS

**A.     Smelting Site Operations**

17.     The Smelting Site is located on approximately nine acres at or near 3100 Castor Avenue, Philadelphia, Pennsylvania.

18.     From approximately 1935 until 1997, a secondary smelting and refining facility was operated on a portion of the Smelting Site, which is divided into several parcels.

19.     At times relevant to this Complaint, the Defendant Partnership has held title to one parcel, including the portion of the Smelting Site where the smelting facility was located, and Defendant Francos Realty has held title to the other parcels.

20.     The operation of the smelting facility  involved purchasing feedstock material,

4

such as slag, telephone scrap, metal fines, and metal scrap, which was processed and smelted into products such as blister and black copper, mineral grit, converter slag, zinc oxides, and ammonium sulfate.

21.     From at least 1952 until 1983, the secondary smelting and refining facility was operated by the Partnership under the name Franklin Smelting & Refining Co.

22.     In 1983, the general partners of the Partnership formed the Defendant Franklin Corp. The Franklin Corp. assumed the assets and operations of the Partnership and continued secondary smelting and refining operations at the Smelting Site until approximately 1997.

23.     As a result of the operations at the Smelting Site, hazardous substances were disposed of at the Smelting Site and there was a release or threatened release of these hazardous substances into the environment during times relevant to this Complaint.  During an initial assessment of the Smelting Site in October 1997 and during EPA's subsequent removal activities, EPA determined that there was a release or threatened release of hazardous substances into the environment from the Smelting Site, including, but not limited to, lead, arsenic, cadmium, polychlorinated biphenyls ("PCBs"), and corrosive and flammable liquids.  Based upon information and belief, it is likely to be determined that hazardous substances as identified above were disposed of at the Smelting Site and were released or threatened to be released into the environment during the times the Partnership and the Franklin Corp. operated the Smelting Site.

**B.     Response Actions In Connection With The Smelting Site**

24.     EPA initiated an initial assessment of the Smelting Site in late 1997 pursuant to Section 104(b) of CERCLA, 42 U.S.C. § 9604(b).  Analytical results based upon the initial

5

assessment confirmed the presence of lead, cadmium and arsenic that had been released or were threatened to be released at the Smelting Site..

25.     In October 1997, a multimedia inspection was conducted at the facility. Based upon the inspection and analytical results, EPA found, inter alia: (a) deteriorating and leaking drums, some of which contained leachable lead or cadmium and (b) slag material that also contained leachable lead. Further, EPA found that various equipment and building components were covered with residual dust, which was analyzed as containing elevated levels of lead, cadmium and arsenic. The dust was subject to becoming airborne and being released into the environment as wind and rain entered through openings into the buildings that housed some of the large process equipment.

26.     Based upon the assessment and inspection of the Smelting Site, EPA determined that the actual or threatened release of hazardous substances from the Smelting Site, if not addressed, could present an imminent and substantial endangerment to public health, welfare, or the environment. Between approximately February 1998 and February 2000, EPA conducted removal response activities at and in connection with the Smelting Site.

27.     EPA and the Department of Justice have undertaken other response activities in connection with the Smelting Site, including, but not limited to, enforcement-related activities.

28.     As of approximately 2002, the United States had incurred response costs of at least $18,828,797 in connection with the Smelting Site under Section 104 of CERCLA, 42 U.S.C. § 9604.

C.     **Slag Site Operations**

29.     The Slag Site is located adjacent to the Smelter Site on the northwest corner of

6

Castor Avenue and North Delaware Avenue, Philadelphia, Pennsylvania.

30.     From approximately the mid-1930's onward, the Partnership began to deposit mineral grit or slag by-product of the Smelting Site facility's smelting process in a large pile on the Slag Site.  In the 1940's, the Partnership began selling the slag as insulation for the construction industry.

31.     In 1964, the Partnership began to supply mineral grit from the slag pile to the Philadelphia Navy Yard as a sand-blasting medium.  Defendant Albert Schwab redesigned the grit plant at the Slag Site to better prepare the slag for marketing as a sand-blasting medium.

32.     In the late 1960's Metals Development Company was formed to process the slag for sale to the Navy.  The slag was also sold for use in asphalt roofing material.  Defendant MDC succeeded Metals Development Company in 1977.  MDC also supplemented the slag it received from the Smelting Site with coal and copper slag from other compainies.

33.     Certain now-deceased partners of the Partnership purchased the Slag Site in 1950, and Defendant Francos Realty has held title to the property since 1970.

34.     MDC ceased operations at the Site in 1999.

35.     As a result of the operations of MDC and its predecessors at the Slag Site, hazardous substances were disposed of, and there was a release or threatened release of these hazardous substances into the environment there during times relevant to this Complaint.

**D.     <u>Response Actions in Connection with the Slag Site</u>**

36.     Airborne releases from the Slag Site were observed throughout the clean-up efforts at the adjacent Smelting Site from 1998-2000.  Slag containing elevated levels of lead was also found overflowing from the Site onto a neighboring railroad trunk line, property owned by

the Philadelphia Water Department, and the sidewalk along Castor and Delaware Avenues.

37.     On January 5, 2000 an EPA contractor conducted sampling at the Slag Site in order to determine the potential hazards of the slag and its impact on the environment through airborne off-site migration and surface water run-off. The samples were found to contain lead concentrations from 4,200 to 22,100 parts per million. Cadmium, copper, iron, and zinc were also detected above their risk-based concentration levels.

38.     On January 10, 2000, EPA initiated an emergency removal action at the Slag Site to stabilize the slag pile and to prevent further off-site migration by covering the pile with a high density polyethylene cover and installing a silt fence around the site. EPA also decontaminated adjacent areas where the slag had migrated.

39.     EPA performed a Remedial Investigation/Feasibility Study of the Site, and is currently considering a permanent means of remediating contamination at the Site.

40.     EPA and the Department of Justice have undertaken other response activities in connection with the Slag Site, including, but not limited to, enforcement related activities.

41.     As of approximately 2002, the United States had incurred response costs of at least $6,479,330 in connection with the Slag Site under Section 104 of CERCLA, 42 U.S.C. § 9604, and expects to incur at least $5,650,000 in additional response costs before remediation is complete.

42.     The Commonwealth has also incurred response costs in connection with the Smelting Site.

8

## FIRST CLAIM FOR RELIEF
(Franklin Smelting Site — CERCLA)

43.     The United States re-alleges and incorporates by reference paragraphs 1 through 42 above, as if fully set forth below.

44.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as amended, provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subse

(1) the owner and operator of a vessel or facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

45.     Lead, cadmium, arsenic, PCBs and other substances found at the Smelting Site are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14). EPA determined that the above-mentioned hazardous substances were disposed of at the Sites.

46.     The hazardous substances found at and/or near the Smelting Site in soil and on equipment and surface areas were released or threatened to be released into the environment within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

47.     The Smelting Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

48.     To protect the public health, welfare and the environment from the actual or threatened release of a hazardous substance into the environment from the Smelting Site, the

9

Administrator of EPA, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has undertaken response activities with respect to the Smelting Site that are not inconsistent with the NCP, including investigations, monitoring, assessing, testing, and enforcement related activities.

49.     The Partnership is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) as an operator of the Smelting Site when hazardous substances were disposed of there.

50.     The Partnership is liable under Sections 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) as an owner of the Smelting Site or a portion thereof when hazardous substances were disposed of there.

51.     Defendant Franklin Corp. is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as an operator of the Smelting Site when hazardous substances were disposed of there.

52.     Defendant Francos Realty is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as an owner of the Smelting Site or a portion thereof when hazardous substances were disposed of there.

53.     Defendants Albert Schwab, Michael Saltzburg, Betty Saltzburg, Betty Saltzburg as Executrix of the Estate of David Saltzburg, Susan Saltzburg, Roger Schwab, and Ann Schwab Brown, as general partners in the Partnership, are each liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) to the same extent as the Partnership as an owner of the Smelting Site when hazardous substances were disposed of there.

54.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are jointly and severally liable for all response costs incurred and to be incurred by the United States

10

with respect to the Smelting Site.

**SECOND CLAIM FOR RELIEF**
(Franklin Slag Site — CERCLA)

55.     The United States realleges and incorporates by reference paragraphs 1 through 54 above, as if fully set forth below.

56.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as amended, provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subse

(1) the owner and operator of a vessel or facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances; . . .

shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

57.     Lead, copper, cadmium, and zinc and other substances found at the Slag Site are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14). EPA determined that the above-mentioned hazardous substances were disposed of at the Slag Site.

58.     The hazardous substances found at the Slag Site were released or threatened to be released into the environment within the meaning of Section 101(22) of CERCLA, 42 U.S.C. §

11

9601(22).

59.     The Slag Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

60.     To protect the public health, welfare and the environment from the actual or threatened release of a hazardous substance into the environment from the Slag Site, the Administrator of EPA, pursuant to Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), has undertaken response activities with respect to the Slag Site that are not inconsistent with the NCP, including investigations, monitoring, assessing, testing, and enforcement related activities.

61.     Defendant Francos Realty is liable under Section 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1-2), as a current owner of the Slag Site and as a past owner of the Slag Site when hazardous substances were disposed of there.

62.     Defendant MDC is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as an operator of the Slag Site when hazardous substances were disposed of there.

63.     The Partnership is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) as having arranged for the disposal of hazardous substances at the Slag Site.

64.     Defendant Franklin Corp. is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) as having arranged for the disposal of hazardous substances at the Slag Site.

65.     Defendants Albert Schwab, Michael Saltzburg, Betty Saltzburg, Betty Saltzburg as Executrix of the Estate of David Saltzburg, Susan Saltzburg, Roger Schwab, and Ann Schwab Brown, as general partners in the Partnership, are each liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) to the same extent as the Partnership.

66.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are

12

jointly and severally liable for all response costs incurred and to be incurred by the United States with respect to the Slag Site.

## THIRD CLAIM FOR RELIEF
(Franklin Slag Site — Pennsylvania Hazardous Sites Cleanup Act)

67.    Paragraphs 1 through 66 are re-alleged and incorporated herein by reference.

68.    Each Defendant is a "person" as defined by Section 103 of the HSCA, 35 P.S. §6020.103.

69.    The Slag Site is a "site" within the meaning of Section 701 of HSCA, 35 P.S. §6020.701.

70.    There has been a "release" (as defined by Section 103 of HSCA, 35 P.S. §6020.103) or a threatened "release" of "hazardous substances" (as defined by Section 103 of HSCA, 35 P.S. §6020.103) from the Slag Site, within the meaning of Section 701(a) of HSCA, 35 P.S. §6020.701(a).

71.    Defendant Francos Realty is a person who owns the Slag Site and owned it at a time when the hazardous substances found there and giving rise to response actions conducted there were placed or came to be located there.

72.    Defendant MDC is a person who operated the Slag Site at a time when the hazardous substances found there and giving rise to response actions conducted there were placed or came to be located there.

73.    The Partnership is a person who arranged for the disposal of hazardous substances at the Slag Site.

74.    Defendant Franklin Corp. is a person who arranged for the disposal of hazardous

13

substances at the Slag Site.

75.      Defendants Albert Schwab, Michael Saltzburg, Betty Saltzburg, Betty Saltzburg as Executrix of the Estate of David Saltzburg, Susan Saltzburg, Roger Schwab, and Ann Schwab Brown, as general partners in the Partnership, are persons who are each liable under HSCA to the same extent as the Partnership.

76.      The Commonwealth has undertaken and incurred the costs of interim response actions to address the release or threatened release of hazardous substances at and from the Slag Site.

77.      The Commonwealth may undertake and incur additional interim response actions and/or necessary and appropriate costs of additional remedial response to address the release or threatened release of hazardous substances at and from the Slag Site.

78.      Pursuant to Sections 701(a) and 702 of HSCA, 35 P.S. §§6020.701(a) and 6020.702, Defendants are responsible for the release or threatened release of such hazardous substances from the Slag Site, including (i) costs of interim response actions, and (ii) reasonable and necessary or appropriate costs of remedial response incurred by the United States and the Commonwealth.

79.      Pursuant to Section 507 of HSCA, 35 P.S. §6020.507, the Commonwealth is entitled to recover from Defendants any response costs incurred by the Commonwealth with respect to the release or threatened release of hazardous substances at or from the Slag Site, including administrative and legal costs incurred from its initial investigation up to the time that the Commonwealth recovers its costs.

80.      Pursuant to Section 1103 of HSCA, 35 P.S. §6020.1103, the Commonwealth is

14

entitled to institute a suit in equity in the name of the Commonwealth to restrain any violation of HSCA, and such actions may be filed in a federal court having jurisdiction over the matter.

81.    The Defendants are liable to the Commonwealth for payment of all response costs incurred or to be incurred by the Commonwealth at the Slag Site pursuant to Sections 701 and 702 of HSCA, 35 P.S. §§6020.701-6020.702.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that the Court enter a judgment against the Defendants, jointly and severally, as follows:

A.    Enter judgment against Defendants, pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, as being liable for the United States' and the Commonwealth's past response costs and all response costs that may be incurred in connection with the Sites;

B.    Order Defendants to pay all past response costs incurred in conducting response activities in connection with the Sites;

C.    Enter a declaratory judgment as to Defendants' liability that will be binding in future actions to recover response costs incurred in connection with the Sites;

D.    Grant equitable relief under HSCA, satisfying the enforcement and diligent prosecution provisions contained therein;

E.    Award the costs of this action to the United States and the Commonwealth; and

F.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*For the United States:*

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


JOHN W. SITHER
Environmental Enforcement Section
U.S. Department of Justice
P.O Box 7611
Washington, D.C.  20044
(202) 514-5484
John.Sither@usdoj.gov

ZANE DAVID MEMEGER
United States Attorney
Eastern District of Pennsylvania


SUSAN R. BECKER
Assistant United States Attorney
Office of the United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8310
Susan.Becker@usdoj.gov

OF COUNSEL:

MARK BOLENDER
Assistant Regional Counsel
U.S. Environmental Protection Agency
1650 Arch Street
Philadelphia, PA  19103

*For the Commonwealth of Pennsylvania*

_____

ANDERSON LEE HARTZELL
Supervisory Counsel
Department of Environmental Protection
Southeast Region
Office of Chief Counsel
2 East Main Street, 4th Floor
Norristown, PA 19401